# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| WORLDQUEST RESORT CONDOMINIUM OWNERS ASSOCIATION, INC.<br><br>    *Plaintiff,*<br><br>v.<br><br>HOTWIRE COMMUNICATIONS, LTD; and HOTWIRE COMMUNICATIONS, LLC.<br><br>    *Defendants.* | CASE NO.: |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Worldquest Resort Condominium Owners Association, Inc. ("Worldquest"), by and through undersigned counsel hereby sets forth this Complaint against Defendants, Hotwire Communications, Ltd. and Hotwire Communications, LLC (collectively "Hotwire") and says as follows:

### A.  PARTIES AND JURISDICTION

1.  Plaintiff, Worldquest Resort Condominium Owners Association, Inc. is a non-profit corporation duly incorporated in the State of Florida. The primary purpose of Worldquest is to perform all of the duties and obligations of the association as set forth in the Articles of Incorporation and Bylaws and Declaration of Condominium for Worldquest Resort applicable to certain property situated in

Orange County, Florida. Worldquest has the authority to sue and be sued, complain, and defend in its corporate name.

2. The Defendant Hotwire Communications, LTD, is upon information and belief a corporation organized and existing under the laws of the State of Florida with a principal place of business in Bala Cynwyd, Pennsylvania with Registered Agent in Fort Lauderdale, Florida.

3. The Defendant Hotwire Communications, LLC, is upon information and belief a corporation organized and existing under the laws of the State of Florida with a principal place of business in Bala Cynwyd, Pennsylvania with Registered Agent in Fort Lauderdale, Florida.

4. Defendants, Hotwire, are foreign companies registered to conduct business in the State of Florida.

5. This Court has jurisdiction over this action under 28 U.S.C. § 1332, because the parties are completely diverse in citizenship and the amount in controversy in this action exceeds $75,000 exclusive of interest and costs.

6. Under 28 U.S.C. § 1391 (b)(2), venue is proper in this district because a substantial portion of the events or omissions giving rise to Worldquest's claim occurred in this district.

7. This action sets forth a claim for declaratory relief and breach of contract with respect to contracts entered into between Worldquest and Hotwire or

its predecessors. Worldquest is an interested party in such contract, and Worldquest requests that this Court determine the rights, status, or other legal relations of both Worldquest and Hotwire with respect to any such contracts.

### B. GENERAL ALLEGATIONS

8. On or around July 28, 2005, World Resort Partners, LLC and Capitol Infrastructure, LLC ("Capitol"), entered into a Master Community Infrastructure Agreement ("MCIA"), the terms of which provided, *inter alia*, that Capitol would be the exclusive provider to Worldquest of infrastructure including, without limitation, internal and external wiring, conduit, equipment, facilities, molding, and security systems, which enable the residences to receive and be served with multi-channel video services, cable/fiber optic services, voice services, data services, security services, and related communications services and an accompanying Bulk Service Agreement ("BSA") in which Capitol Infrastructure, LLC agreed to provide voice, video and data services to Worldquest (collectively the "Contract"). A copy of the MCIA is attached as **Exhibit "A."** A copy of the BSA is attached as **Exhibit "B."**

9. On or about July 7, 2006, the declarant, World Resort Partners, LLC (the "Declarant"), caused to be recorded the certain Declaration of Condominium Worldquest Resort, a Condominium, recorded in Official Records Book 08739, Page

4258, of the Orange County Public Records. On or about July 7, 2013, Worldquest assumed control of the association.

10. Upon information and belief, Hotwire claims to be the successor in interest and/or assignee to both the MCIA and the BSA, and is thus, subject to the terms and conditions of both agreements, mandating, *inter alia*, minimum levels of phone, internet, and video services.

11. The term of the MCIA is provided in Section 5 as follows:

> **5. Term.** The initial term of this Agreement commences on the date of this Agreement and continues for 12 years after the date on which the first certificate of occupancy is issued for a residence on the Property ("Initial Term"). At the end of the anniversary of the execution of this agreement, this Agreement automatically will be extended for an additional year unless either party notifies the other in writing at least 60 days before the end of the Initial Term that it does not wish to have this Agreement be so extended by one more year, in which case the Term shall continue for the initial twelve years as well as for each additional year for which no such notice was timely given.

12. Pursuant to Section 5 of the MCIA, unless otherwise determined by the parties, the duration of the MCIA was for 12 years, and was set to expire July 28, 2017.

13. The duration of the BSA is provided in Section 7 as follows:

> 7. <u>Term and Termination Rights</u>. This Agreement becomes effective on the date first above written (the "Effective Date") and remains in full force and effect for five (5) years after the date on which Service Provider begins providing services hereunder ("Term"). The Term of this Agreement shall automatically be extended by one year on each anniversary after

the effective date hereof, unless sixty (60) days prior to each such anniversary Agent gives notice to Service Provider, which notice states that Agent elects to have no further extensions occur. This Agreement will automatically terminate upon termination of Service Provider's Infrastructure Use Rights or upon termination by Agent, upon default by Service Provider in accordance with Section 10.

14. Under Section 7 *et. seq.* of the MCIA, a party may terminate the agreement as follows:

> **7.1 Default.** In addition to the other breaches or defaults specified in this Agreement, a "default" exists under this Agreement upon any of the following events: **(A)** if [either party] fails to meet or perform any material term, provision, covenants, agreement, or obligation contained in this Agreement and then does initiate steps to cure such failure within fifteen (15) days and proceed to cure such failure within forty-five (45) days…after receiving notice from the other party that reasonably details such breach…**(B)** if [either party] becomes a debtor in a bankruptcy proceeding or similar action or proceeding that is not permanently dismissed within sixty (60) days; or **(C)** if [either party] becomes insolvent…

15. Section 10 *et. seq.* of the BSA provides near identical default provisions as those of the MCIA, as stated above.

16. Section 7.3 of the MCIA provides that if a party defaults and fails to cure as provided within the MCIA, then the non-defaulting party may terminate the MCIA by giving thirty (30) day notice to the defaulting party.

17. After the execution of the MCIA and the BSA, the telecommunications and infrastructure services performed poorly and below acceptable industry

standards, and incurred ongoing service interruption and deficiencies, which remained uncured by Capitol.

18. Additionally, Hotwire and Capitol, its predecessor in interest, consistently over-charged Worldquest by adding taxes and charging in excess of the per unit amount as set forth in the BSA.

19. Plaintiff reasonably believes, and therefore alleges upon information and belief, in or around April 2012, Hotwire's predecessor in interest, Capitol, was insolvent and filed petition for Chapter 11 bankruptcy.

20. Plaintiff reasonably believes, and therefore alleges upon information and belief, in or around June 2012, Hotwire acquired Capitol via bankruptcy sale.

21. Plaintiff reasonably believes, and therefore alleges upon information and belief, in or around June 2012, Hotwire informed Worldquest of its assumption of the Contract and would start providing services.

22. Since approximately 2014, and continuing through the date of termination, Worldquest has experienced the following deficiencies with respect to telecommunications services, infrastructure, and other material and nonconforming conditions, including without limitation:

   a. Hotwire has failed to maintain the infrastructure in an efficient and operational manner;

b. The telecommunications services provided have been of inferior quality, not up to industry standards, and frequent lag periods and slow performance;

c. The internet and television provided in conjunction with the telecommunications services suffers latency issues and interruption;

d. Costs for infrastructure and telecommunication services have risen and fees have not been charged according to the terms of the Contract;

e. Despite complaints and requests for upgrades to cure the deficiencies, Hotwire has failed to provide adequate services pursuant to the Contract;

f. Despite a request for accounting of the Hotwire services, Hotwire has failed to provide an accounting.

23. On December 28, 2020, Worldquest, through its designated counsel, requested Hotwire to upgrade its services to comply with the Contract and industry standards.

24. Worldquest, after receiving no upgrades to bring the infrastructure and services up to industry standards, through its designated Counsel, notified Hotwire of its intention to terminate the Contract effective July 31, 2021.

### C.   FIRST CLAIM FOR RELIEF
(<u>Declaratory Judgment – Unconscionable</u>)

25. The allegations contained in paragraphs 1 through 24 of this Complaint are re-alleged and incorporated by reference.

26. This action sets forth a claim for declaratory relief with respect to the Contract and any and all subsequent modifications, agreements, amendments, addendums, or revisions thereto and between Worldquest and Hotwire.

27. There is an actual justiciable controversy as to the rights of Worldquest and Hotwire with respect to the Contract and, specifically with respect to Section 5 of the MCIA and Section 7 of the BSA, both sections pertaining to the duration of the Contract.

28. Developer contracts for bulk services may be terminated by the association. Florida Statutes § 718.115(1)(d) provides that bulk services contracts may be terminated by the association.

29. The Contract was entered into by the Declarant prior to the election of an independent board of directors.

30. The Contract's terms were unconscionable at the time MCIA and the BSA were entered into, and remain so; specifically, Section 5 of the MCIA and Section 7 of the BSA.

31. Upon information and belief, Hotwire contends that based on the ambiguous language of the Contracts, there are multiple years of contractual obligations left.

32. Hotwire's interpretation of the Contract is unfair towards Worldquest and all owners within Worldquest Resort, who by virtue of the Declarant entering into such Contract prior to the election of an independent board of directors, are subjected to this Contract.

33. Assuming, *arguendo*, the Contract is not terminable, such position is not conceded by Worldquest, the Contract has already been terminated due to the following, including without limitation: (1) Capitol was insolvent and declared bankruptcy in 2012, and thus, Capitol defaulted pursuant to Section 7.1 of the MCIA; and, (2) Worldquest provided notice to Hotwire of its default pursuant to Section 7.1 of the MCIA and Hotwire failed to cure its default.

34. Worldquest seeks a determination by this Court that pursuant to the terms of the Contract and Florida Statute § 718.115 (1)(d), Worldquest may terminate Contracts, or in the alternative, that Worldquest already has properly and effectively terminated the Contract effective immediately.

WHEREFORE, Worldquest demands judgment against Hotwire for declaratory relief, and for such other further relief as this Court may find just and proper.

### D. SECOND CLAIM FOR RELIEF
(Declaratory Relief – Void as Against Public Policy)

35. The allegations contained in paragraphs 1 through 24 of this Complaint are re-alleged and incorporated herein.

36. This action sets forth a claim for declaratory relief with respect to certain terms of the Contract between Worldquest and Hotwire.

37. There is an actual justiciable controversy as to the rights of Worldquest and Hotwire with respect to the Contract and, specifically with respect to the exclusivity requirements of the MCIA and BSA.

38. Congress has repeatedly expressed a clear intent to limit the power of a telecommunications operator asserting its unequal bargaining power against consumers.

39. Pursuant to federal law, "exclusivity clauses," or clauses that grant an operator exclusive access for providing telecommunications services within a particular real property development, have been regulated and deemed void as against public policy. *See, In the Matter of Exclusive Service Contracts for Provisions of Video Services in Multiple Dwelling Units & Other Real Estate Developments*, 22 F.C.C. Red. 20235 (2007) (the "FCC Order").

40. The FCC Order provides:

> … no cable operator or multichannel video programming distributor subject to Section 628 of the Act shall enforce or execute any provision in a contract that grants it the exclusive right to provide any video programming service (along or in combination with other services) to a [multiple dwelling unit]. Any such exclusivity clause shall be null and void.

*Id.* at 20251.

41. Pursuant to the FCC Order, to the extent contracts contain exclusivity provisions, such provisions are null and void. Accordingly, all provisions in the Contract and easement suggestive of Hotwire's exclusive access to Worldquest property are null and void, including without limitation, the following:

   a. Section 3 of the MCIA provides Hotwire with the "exclusive right to access, control and operate the infrastructure."

   b. Section 1.2 of the MCIA provides for Hotwire's exclusive easement rights.

   c. Section 4.1 of the MCIA further provides authority for Hotwire's exclusive easement.

   d. Section 4.1 of the MCIA provides Hotwire the exclusive right to install the infrastructure and related services at Worldquest and the exclusive right to select telecommunication service providers at Worldquest.

   e. Section 4.3 (A) of the MCIA states that no one shall be allowed to install additional equipment for the purpose of providing similar services at Worldquest. Pursuant to this section Hotwire automatically becomes a third-party beneficiary of such contracts if entered into and has the right to enforce same.

    f. Section 4 of the Easement provides for a perimeter easement for Hotwire around Worldquest and requires that no other easements be granted to competing service providers therein.

    g. Section 5 of the Easement grants a blanket exclusive easement over the property at Worldquest and states that, "during the term of the Agreement no provider of Services other than the Grantee may also provide Services within [Worldquest].

    h. Section 10 of the Easement provides that in the event a resident of Worldquest enters into a service agreement with another service provider, upon "reasonable compensation," Hotwire will grant a limited "non-infrastructure", "non-exclusive" easement right for access over Hotwire's exclusive easement over the entirety of Worldquest.

42. Hotwire, as Capitol's successor in interest, is now attempting to bind Worldquest to contracts so patently one-sided, Worldquest would have never entered into them in the first place had it actually been given the opportunity to negotiate.

43. The above provisions of the MCIA and the BSA are all null and void due to their unconscionability.

44. Worldquest seeks a determination by this Court that the provisions of the MCIA and BSA are unconscionable and thus null and void as against public policy.

45. Worldquest further seeks a determination by this Court that the Easement is unconscionable, and thus null and void as against public policy.

WHEREFORE, Worldquest demands judgment against Hotwire for declaratory relief, and for such other further relief as this Court may find just and proper.

### E. THIRD CLAIM FOR RELIEF
(Breach of Contract)

46. The allegations contained in paragraphs 1 through 24 of this Complaint are re-alleged and incorporated by reference.

47. There is an actual justiciable controversy over the performance of Hotwire and the failure of Hotwire and its predecessor in interest to provide the minimum levels of services required by the Contract.

48. As a result of the failure of Hotwire's and its predecessor's failure to provide the minimum levels of service required by the Contract, Worldquest has been harmed. That harm includes, without limitation, the differential between the value of the high-speed interest services required by the Contract and the low-definition, low-speed services actually provided in excess of the price agreed to in the Contract.

49. Hotwire and its predecessor in interest had valid contracts with Worldquest.

50. Hotwire and its predecessor in interest failed to and neglected to provide the minimum levels of service, which meet or exceed the industry standards, as set forth in the BSA.

51. Hotwire and its predecessor in interest overcharged Worldquest by charging for services at a rate $238.00 per unit plus tax, not the agreed upon rate of $110.00 per unit, inclusive of tax as set out in Exhibit C, Section 1.1 of the BSA.

52. Hotwire failed to cure these failures after having received notice by Worldquest of the poor service, low internet speeds and lagging connections as required by the MCIA.

53. Hotwire failed to upgrade the services that were clearly not up to industry standards as required in the BSA, despite Worldquest's request for such upgrades to the services.

54. As a result of these failures and breaches to the Contract, Worldquest has suffered and continues to suffer harm including, without limitation, the difference between the low definition, low speed internet services provided and the high speed, high-definition services, which would meet or exceed industry standards as required by the Contract. Worldquest has been damaged and continues to suffer harm as a direct consequence of Hotwire's overbilling Worldquest for services and adding additional tax to the costs, breaching the BSA.

55. As a direct consequence of the breaches of the Contract by Hotwire, Worldquest has been damaged in an amount well in excess of $75,000.00.

WHEREFORE, Worldquest demands judgment against Hotwire for damages, prejudgment interest, attorney's fees, costs, and such other further relief as this Court may find just and proper.

### F.  DEMAND FOR JURY TRIAL

Under Federal Rule of Civil Procedure 38, Worldquest demands a trial by jury on all matters so triable.

Dated: December 15, 2021

        Respectfully submitted by:

        */s/ Thomas C. Allison*
        **Tucker H. Byrd**
        Florida Bar No. 381632
        **Thomas C. Allison**
        Florida Bar No. 35242
        **BYRD CAMPBELL, P.A.**
        180 Park Avenue North, Suite 2A
        Winter Park, Florida 32789
        Telephone: (407) 392-2285

*<Certificate of Service on Next Page>*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 15, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

>  */s/ Thomas C. Allison*
> **Tucker H. Byrd**
> Florida Bar No.: 381632
> **Thomas C. Allison**
> Florida Bar No.: 35242
> **BYRD CAMPBELL, P.A.**
> 180 Park Avenue North, Suite 2A
> Winter Park, Florida 32789
> Telephone: (407) 392-2285
> Facsimile: (407) 392-2286
> Primary Email:    TByrd@ByrdCampbell.com
> Primary Email:    TAllison@ByrdCampbell.com
> Secondary Email: CKittel@ByrdCampbell.com
> Secondary Email: ESaleem@ByrdCampbell.com